UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALINA BEKKERMAN; BRANDON GRIFFITH; JENNY LEE; and CHARLES LISSER,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA BOARD OF EQUALIZATION; STATE OF CALIFORNIA; AT&T, INC.; SPRINT CORPORATION; T-MOBILE US, INC.' VERIZON COMMUNICATIONS, INC.' and DOES 1 to 20, inclusive,<br><br>Defendants. | No. 2:16-cv-00709-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present consumer class action, Plaintiffs seek to force cellphone carriers to apply to the State Board of Equalization ("Board") for a refund of sales taxes they claim was illegally collected.  Plaintiffs' suit was originally filed in the Sacramento County Superior Court.  On April 4, 2016, Defendant AT&T, Inc., with the consent of the other carrier Defendants, removed the case to federal court pursuant to Section 4 of the Class Action Fairness Act of 2005 ("CAFA"), which amended 28 U.S.C. § 1332 to grant district courts original jurisdiction over putative class actions with 100 or more class members, where the aggregate amount in controversy exceeds $5 million, and where any member of the class of plaintiffs is a citizen of a state different from any defendant.

28 U.S.C. § 1332(d). Presently before the Court are Motions to Remand filed by both the State of California (ECF No. 19) and Plaintiffs (ECF No. 22). As set forth below, both Motions are GRANTED, but the Court declines to award attorneys' fees as requested by Plaintiffs.[1]

**BACKGROUND**

Plaintiffs allege that they each purchased one or more cellular telephones or similar devices from a retail store operated by one of the carrier Defendants. Pls.' Compl., ¶¶ 50, 63, 73, 83, 90. Plaintiffs further claim that they received a discounted price for the cellular telephones because they agreed to a "bundled transaction" in which they were required to sign a contract to purchase cellular service for a set period of time (usually two years) from the same carrier who had sold the cellular phone. Id. at ¶¶ 51, 64, 75, 85, 92. Plaintiffs go on to allege that in each sales transaction, they were charged sales tax based on the unbundled price of the cellular phone (i.e., the price they would have paid for the cellular telephone had they not agreed to a service contract with one of the carriers), rather than the discounted price they actually paid. Id. at ¶¶ 53-56, 66-69, 77-80, 87-89, 94-97.

The sales tax was calculated in this matter due to the Board's interpretation of the California Revenue and Taxation Code through a regulation it issued in 1989. Plaintiffs claim that this regulation, as embodied in Cal. Code Regs., tit. 18, § 1585 ("Regulation 1585") incorrectly required cellphone carriers to charge sales tax on the unbundled, full value of cellphones rather than the discounted amount actually charged for the phones when connected with a service plan. Regulation 1585 requires sales tax on the full value rather than the discounted price because, in a bundled transaction, carriers pay the retailer a commission to offset the discount that the retailer offers to the consumer.

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing in accordance with Local Rule 230(g).

This is based on the California Taxation Code, which mandates that sales tax be payable on a retailer's "gross receipts," with gross receipts including not only the price paid by the consumer but also amounts paid by a manufacturer or other third party to the retailer, such as rebates, reimbursements, and in this case, commissions. Cal. Rev. & Tax. Code §§ 67012 and 6051.

Plaintiffs nonetheless claim that Regulation 1585 is invalid as applied to carrier-operated stores because it is not consistent with the Taxation Code. Pls.' Compl., ¶¶ 5, 8. Plaintiffs further allege, in the alternative, that Regulation 1585 is void in any event because it was not promulgated in a manner consistent with the California Administrative Procedures Act, Cal. Gov't Code § 11340 et seq. Id. at ¶ 10.

On November 19, 2015, about three months before filing the present lawsuit, Plaintiffs instituted an action in the California County Superior Court seeking a writ of mandamus declaring Regulation 1585 to be void pursuant to California Government Code § 11350. While that action remained pending, Plaintiffs filed the present class action which seeks refunds/damages on behalf of a class of consumers based on the alleged invalidity of Regulation 1585. According to Plaintiffs, because they cannot seek sales tax refunds directly from the Board, they must instead rely on retailers to make an application for such refunds on their behalf. Plaintiffs accordingly included the carriers as defendants in this action as an enforcement mechanism.

Both cases filed by Plaintiffs in state court were related and assigned to the same judge. State's Request for Judicial Notice, Ex. C.[2] As indicated above, however, the class action was subsequently removed to this Court, and the present Motions to Remand followed.

///
///
///

---

[2] The State Defendants' Request for Judicial Notice, brought under Federal Rule of Evidence 201, is unopposed and is hereby GRANTED.

**STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

The district court determines whether removal is proper by first determining whether a federal question exists on the face of the plaintiff's well-pleaded complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). If a complaint alleges only state-law claims and lacks a federal question on its face, then the federal court must grant the motion to remand. See 28 U.S.C. § 1447(c); Caterpillar, 482 U.S. at 392. Nonetheless, there are rare exceptions when a well–pleaded state-law cause of action will be deemed

4

to arise under federal law and support removal. They are "(1) where federal law completely preempts state law, (2) where the claim is necessarily federal in character, or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." ARCO Envtl. Remediation L.L.C. v. Dep't of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney fees accrued in response to the defendant's removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

## ANALYSIS

There are multiple reasons why this case does not belong in federal court. First, the so-called Tax Injunction Act ("TIA") does not permit any suit involving state taxes, including refund suits, to be maintained in federal court. The TIA mandates that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA accordingly divests district courts of subject-matter jurisdiction over any action threatening to interfere with the assessment or collection of state taxes, unless plaintiffs are without an effective remedy in the state courts. See United Gas Pipe Line Co. v. Whitman, 595 F.2d 323, 326 (5th Cir. 1979) ("In short, the history of section 1341 . . . evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems.") As the Ninth Circuit has noted, the TIA's "primary purpose is to prevent federal court intrusion into state tax collection, an area which deserves the utmost comity to state law and procedure." Jerron West, Inc. v. State of California State Board of Equalization, 129 F.3d 1334, 1338 (9th Cir. 1997).

1      In Jerron West, taxpayers filed an action for injunctive and declaratory relief
2 seeking to enjoin the Board from conducting administrative proceedings against them for
3 the assessment and collection of state sales tax. Id. at 1335-36.  The Ninth Circuit held
4 that "[b]ased on a plain reading of the statute, the district court does not have jurisdiction
5 over the Taxpayers' action if it seeks district court interference with California's tax
6 assessment and collection process." Id. at 1337.  The court further observed that even
7 though the TIA itself addressed only injunctive relief, "despite the absence of explicit
8 language" it also applied to declaratory relief, or actions seeking damages or refunds like
9 the present one. Id. at 1338 (citing Marvin F. Poer and Co. v. Counties of Alameda,
10 725 F.2d 1234, 1235-36 (9th Cir. 1984).  Moreover, according to the Ninth Circuit, the
11 TIA's reach is wide enough to apply to actions imposing only "an indirect restraint on tax
12 assessment." Jerron West, 129 F.3d at 1337.  The test under the TIA "is whether
13 plaintiff's action, if successful, would reduce the flow of state tax revenue." Quest
14 Corp. v. City of Surprise, 434 F.3d 1176, 1184 (9th Cir. 2006).

15      In this Court's view, the broad sweep of the TIA unquestionably encompasses the
16 present action.  Plaintiffs' Complaint seeks a court order requiring the carriers to seek a
17 refund of sales tax from the State Defendants, requiring the State to make said refunds,
18 and enjoining the carriers from paying future sales tax to the State.  Pls.' Compl., ¶ 46.
19 The requested relief, if granted, would directly restrain the assessment and collection of
20 California's sales tax.  The TIA divests this Court of the jurisdiction to grant such relief.
21 Levin v. Commerce Energy, Inc., 560 U.S. 413, 428 (2010) (The TIA "precludes relief
22 that would diminish state revenues. . .").

23      Although the TIA contains a caveat in predicating its reach on the availability of a
24 "plain, speedy and efficient" remedy in state court, here it appears that Plaintiffs are
25 seeking just such a remedy.  Pursuant to California Government Code § 11350, "[a]ny
26 interested person may obtain a judicial declaration as to the validity of any regulation or
27 order of repeal by bringing an action for declaratory relief in the superior court in
28 accordance with the Code of Civil Procedure."  Cal. Gov't Code § 1350(a).  The

1  Complaint on file herein makes it clear that on November 19, 2015, some three months
2  before this action was filed, these same Plaintiffs brought just such a declaratory relief
3  action in state court.  Pls.' Compl., ¶ 16;

4        Additionally, even if the TIA does not apply, principles of federal/state comity,
5  which are even more far reaching than TIA, mandate that federal courts should refrain
6  from entertaining suits that risk disrupting state tax administration.  Those considerations
7  bar actions in federal court when they would risk disrupting the administration of a state's
8  tax system in general.  Levin, 560 U.S. at 417 ("More embracive than the TIA, the comity
9  doctrine applicable in state taxation actions restrains federal courts from entertaining
10 claims for relief that risk disrupting state tax administration.").  In Jerron West, the Ninth
11 Circuit also made it clear that such factors are paramount:  "[T]he principle of comity
12 alone would bar federal courts from granting damages relief in state tax cases because
13 such relief would intrude upon and disrupt a state's enforcement of its tax system."
14 Jerron West, 129 F.3d at 1338.

15        Finally, the carrier Defendants' reliance on CAFA as a basis for federal jurisdiction
16 is questionable in the first place since there is an exemption under CAFA if the "primary
17 defendants" are state governments or agencies that can raise Eleventh Amendment
18 defenses.  28 U.S.C. § 1332(d)(5).   Here, the carriers argue that they, and not the State,
19 should be considered the primary defendants because of the administrative costs in
20 moving for the refunds fall upon them.  CAFA's legislative history, however, makes it
21 clear that the "primary defendants" exemption is directed to "those defendants who are
22 the real "targets" of the lawsuit—i.e, the defendants who would be expected to incur
23 most of the loss if liability is found . . ." S. Rep. No. 109-14 at 41-43 (2005).  In the
24 instant matter, that analysis leaves little doubt that the primary defendants are in fact the
25 State Defendants, the State of California itself and the Board of Equalization.  It is those
26 Defendants who have charged and collected what Plaintiffs here contend is an illegal
27 tax, and are subject to returning the taxes paid should they be determined improper.
28 Any responsibility on the part of the carriers in requesting refunds, on the other hand, is

merely secondary.  The fact that the State Defendants must be deemed primary then means that CAFA should not have been invoked as a basis for removing this case to federal court in the first place.

For all these reasons,[3] the Court concludes that this case belongs in state court to be heard in conjunction with the mandamus challenge.  Remand is therefore appropriate.

As a final matter, the Court notes that Plaintiffs have requested that they be awarded attorneys' fees and costs under 28 U.S.C. § 1447(c) on grounds that the carrier Defendants lacked a reasonable basis for removal.  This determination hinges on whether the removing party lacked any objectively reasonable basis for seeking removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  As indicated above, however, the Court has broad discretion in deciding whether to award costs and fees whenever it finds that removal was wrong as a matter of law.  Balcorta, 208 F.3d at 1106 n.6.  Here the carrier Defendants contend that because there is no controlling Ninth Circuit authority on just who qualifies as a ""primary defendant,"" they had at least a colorable argument for removal.  They also posit an argument that this case does not directly interfere with state taxes because it is the mandate case pending in state court that seeks a declaration of illegality, with this portion of the case simply operating as a collection mechanism.

In analyzing the circumstances of this matter in their entirety, and in exercising its discretion, the Court cannot find that there was no objectively reasonable basis for removing this matter, and therefore it declines to award costs and fees.

///

///

///

---

[3] While the Court recognizes that the State has posited still other grounds for remand, citing the need for this Court to abstain under so-called Burford abstention, as well as under principles of sovereign immunity, because the propriety of remand is clear based on the factors already considered, the Court need not consider those additional grounds and declines to do so.

**CONCLUSION**

For all of the foregoing reasons, the Motions to Remand brought on behalf of 1) Defendants State of California and California Board of Equalization (ECF No. 19); and 2) Plaintiffs (ECF No. 22) are GRANTED.  Accordingly, this matter is hereby remanded to the originating state court, the Superior Court of the State of California in and for the County of Sacramento, for final adjudication.  Plaintiffs' request for attorneys' fees and costs in moving to remand this matter back to state court is DENIED.

IT IS SO ORDERED.

Dated:  March 20, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE